IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
~~PINE BLUFF~~ Central DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 13 2019

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

NICHOLAS ROOS,

        PLAINTIFF

Vs

YOLANDA CLARK, JAMES GIBSON,
JOYCE JACKSON, DEBRA GOLDMON,
and KAY SKILLEN

        DEFENDANTS

Case No.

4:19-CV-895-BRW-PSH

## COMPLAINT WITH JURY DEMAND

### I. INTRODUCTION

This is a civil action filed by Nicholas Roos, a state prisoner, for damages, declaratory and injunctive relief under 42 U.S.C. § 1983, alleging infringements of dietary requirement and equal protection, obstruction and denial of religious practices, endangerment of health and well-being, retaliation, and failure to properly train and supervise in violation of the First, Eighth and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutional Persons Act ("RLUIPA") under 42 U.S.C. § 2000. The Plaintiff also alleges the torts of Negligence and intentional infliction of emotional distress under the law of Arkansas.

### II. JURISDICTION

1. The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. § 1331(i) and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.

This case assigned to District Judge Wilson
and to Magistrate Judge Harris

## III. PARTIES

3. Plaintiff, Nicholas Roos, is incarcerated at Varner Unit of the Arkansas Department of Corrections (hereafter "ADC"), where the events described in this Complaint occurred. His address is: Nicholas Roos, ADC# 163931, P.O. Box 600 Grady, Arkansas 71644.

4. Defendant Yolanda Clark at all times relevant to this Complaint was Senior Food Production Manager at Varner Unit; as such, she was responsible for the requisition of food and other supplies, the supervision of kitchen staff and inmates assigned to the kitchen, and the preperation and service of all meals at Varner Unit. She is sued in her individual and official capacities.

5. Defendant James Gibson at all times relevant to this Complaint was Warden of Varner Unit, ADC; as such, he is responsible for the overall operation of Varner Unit, including the protection of Plaintiff's health and well-being and constitutional rights. He is sued in his individual and official capacities.

6. Defendant Joyce Jackson at all times relevant to this Complaint was Food Production Manager at Varner Unit. She is sued in her individual and official capacities.

7. Defendant Debra Goldmon at all times relevant to this Complaint was the ADC Dietitian responsible for preparing the "Master Menu" that dictates the type and amount of food to be served to prisoners throughout the ADC, including Varner Unit. She is sued in her individual and official capacities.

8. Defendant Kay Skillen at all times relevant to this complaint was Administrator of ADC Central Warehouse. She is sued in her individual and official capacities.

9. Each Defendant at all times relevant to this complaint acted and continues to act under color of state law.

10. Each Defendant can be located or served at: ADC Compliance Office P.O. Box 2055 Pine Bluff, Arkansas 71612-0550.

## IV. FACTUAL STATEMENTS

11. Plaintiff adheres to Raja Yoga of Hinduism, and

12. subscribs to a vegan diet per Yoga doctrine.

13. The Defendants jointly provide Plaintiff a diet referred to as vegan and have done so since 2017.[1]

### A. Violation of Dietary Requirement

14. Due to nutritional demand, which varies according to type and amount of activity, Plaintiff is unable to sustain his health from the vegan diet provided him because it is deficient, specifically in protein, to wit:

    a. The Defendants provide tofu as protein substitute for egg, sausage and gravy at breakfast on weekdays, and for pancakes, french-toast and sausage on weekends;

    b. Said tofu is often inedible and DANGEROUS for human consumption because of being served spoiled and past its expiration date, sometimes by as much as three (3) or more months;

    c. The tofu has been frozen without first being drained, damaging its texture, leaving a soggy-spongy-rubbery and virtually inedible substance upon thawing;

---

[1] Plaintiff's vegan diet was suspended on or about 9-18-2019, which will be discussed below.

d. In addition, the tofu is ALWAYS served cold and without any preparation whatsoever, despite the "Master Menu" specifying "scrambled tofu";

e. For lunch and dinner Defendants provide white navy and pinto beans as protein substitute for meat, fish and foul;

f. Such protein is incomplete because it does not contain all nine essential amino acids that form the basic constituents of a complete protein;

g. Navy and pinto beans should therefore be consumed — preferably during the same meal, or at least on same day — with foods that contain the amino acids for which beans lack, such as brown rice and/or corn;

h. More often than not, the Defendants fail to timely serve a complementary rice and/or corn with beans;

i. Often beans are not served for lunch and/or dinner and no equivalent protein substitute is provided when not served; for instance, from mid June 2019 to mid July 2019, beans were served at lunch and dinner only about five (5) times[2];

j. Even when beans are served and properly complemented with rice and/or corn, it does not always equal the protein value of the meat, fish or foul for which it substitutes and therefore does not meet Plaintiff's protein requirement;

k. When rice is served, it is ALWAYS white refined rice as opposed

---

[2] During said period, Defendants had peanut butter (a good source of protein) readily available but refused to provide it as substitute for beans.

to brown rice which is nutritionally superior in, inter alia, protein;

L. When bread and pasta is served it is ALWAYS made from white refined flour instead of whole wheat and/or other whole grain flour(s) which is nutritionally superior in, inter alia, protein;

M. White refined rice and bread and pasta made from white refined flour are prohibited under Plaintiff's dietary restriction. Thus, he abstains from these foods as well as processed canned fruit which is served daily with each meal; moreover, pastas and breads served with the vegan diet are not vegan, being made with milk and/or eggs, while many other foods served as vegan are in fact contaminated with non-vegan foods;

N. The vegan diet under Yoga doctrine requires daily or regular consumption of cooked or uncooked green, leafy vegetables as well as regular uncooked raw vegetables — e.g., carrots, cucumbers, broccoli, cauliflower and spinach, etc. — and fresh (not canned) fruit for which Plaintiff almost never receives at Varner Unit.

15. In addition to protein deficiency, the vegan deit also fails to provide the full recommended daily requirement of other essential nutrients such as, but not limited to, potassium, <u>natural</u> vitamin D, and omega-3 fatty acids.

16. The ADC "Master Menu" prepared by Defendant Debra Goldmon does not include or define or outline a vegan deit to be followed.

B. Obstruction of Religious Practice

17. As a practitioner of Raja Yoga, Plaintiff is obligated by doctrine to meditate daily.

18. He is further obligated by doctrine to eat and sleep properly and adequately to facilitate meditation.

19. For the reasons elucidated above as well as those hereafter, Plaintiff is unable to eat – and sleep – properly and adequately, to wit:

    a. Breakfast service at Varner Unit is conducted during sleeping hours, i.e., between approximately 1:30 to 2:45 a.m.;

    b. Eating breakfast at such time causes Plaintiff to lose sleep, sometimes up to three or more hours;

    c. Consequently, Plaintiff often skips breakfast in order to sleep, or attempt sleep, thus forgoing essential nutrition; and,

    d. When Plaintiff forgos breakfast for sleep he is still unable to get proper and adequate sleep because of constantly being awakened during sleeping hours by a myriad of activities (e.g., gym call as late as 10:00 p.m.; library call as late as 10:00 – 11:00 p.m.; Diabetic medication call at around 1:00 a.m., followed by "Pill Call" at around 2:00 a.m.; breakfast service between 1:30 to 2:45 a.m.; inmate count every 2½ hours, approx., whereby ALL lights are turned on for up to 15-20 minutes; and, all lights being permanently turned on at 4:30 a.m. for the day, that is, until 10:30 p.m.).

20. When Plaintiff does not eat breakfast he suffers acute hunger pangs, weight loss,[3] physical exhaustion and mental and emotional anxiety, as well as deprivation of sleep symptoms described hereafter.

21. When he does go to breakfast, which entails a greater loss of sleep than when he does not go (some nights Plaintiff gets as little as three hours of sleep, and even that is interrupted), he suffers mental and physical exhaustion, irritability, cognative impariments such as memory loss and attention deficit, as well as depression and anxiety.

---

[3] During a brief period in 2017-18, Plaintiff lost 35 pounds as a result of forgoing breakfast for sleep and the general inadequacy of the vegan diet.

6

22. Whether forgoing breakfast for sleep or vice verse, Plaintiff's ability to meditate is substantially impeded by the practice of serving breakfast at the aforementioned hours, and the inadequate vegan diet described hereinbefore.

    C. Denial of Natural vitamin D, Natural energy, and religious observance

23. As a practitioner of Raja Yoga, Plaintiff is obligated by doctrine and common practice to briefly yet daily pay direct homage to the sun, i.e., the sun god "Surya," in order to absorb crucial energy and Natural vitamin D. Notwithstanding, Plaintiff is denied daily and regular exposure to the venerated sun god, often going weeks or months without exposure to, direct worship, and acquisition of Surya's Natural resources.

    D. Denial of Equal Protection

24. In contrast to providing breakfast service between 1:30 and 2:45 a.m., the Defendants provide <u>special</u> feeding accommodations for Muslim inmates during the month of "Ramadan." For instance, breakfast for Muslims during Ramadan may be served as late a 4:30 a.m., while lunch and dinner are combined and served together after sunset, hours after general population inmates has eaten their last meal at around around 3:00 to 4:00 p.m..

25. In contrast to not providing Plaintiff a nutritionally adequate vegan diet, the Defendants jointly provide:

    a. A nutritionally adequate "Pork Free" diet for Muslim inmates;
    b. A nutritionally adequate "Common Fare" diet for inmates who choose to eat such for religious reasons;
    c. A nutritionally adequate "Therapeutic Diet" for inmates with special medically prescribed diets; and,

7

　　d. A nutritionally adequate "Regular" diet for inmates without religious or other food or culinary restrictions.

　　E. Deliberate ~~Indifference~~ / Reckless Endangerment

　　26. Food trays at Varner Unit are prepared in the kitchen. As inmates enter the dinning room the trays are served (one after another, back-to-back) through a waist-high slot measuring 6 inches in height by 12 inches in length. There are no windows, holes, or other slots by which to communicate with inmate servers and free-world staff preparing trays. Thus, for Plaintiff to convey that he requires a vegan tray he must squat or stoop to the slot and <u>holler</u> to the inmate servers on the other side. In doing so, he invariably and unavoidably puts his face within 4-6 inches of the prepared tray already in the slot. There is no other way to communicate; and, this method has caused Plaintiff violent confrontation more than once with the inmate immediately in line behind him because of breathing and hollering directly over their tray.[4] Once Plaintiff communicates with the server, which often requires several attempts due to noise level and inherent hardship in communicating through the hole, he steps to the side and the inmates in line behind him, one-by-one, take a tray from the slot until the vegan tray is finally prepared and pushed through.

　　27. The food slot is generally filthy during meal service with food spillage in and around the slot and smeared on the sides and top of said slot without immediate cleaning, causing trays passing through the slot —including Plaintiff's— to become **dirty** on the bottom and sides, and the food on the tray contaminated from droppings off the top and sides of said slot, conditions to which Plaintiff has been subjected to for years. Moreover,

---

[4] During one such confrontation, on or about July 2019, the irate inmate pushed Plaintiff so hard that he fell and injured his right wrist.

8

spillage in the slot runs down the wall and onto the floor without immediate cleaning, and the tables are generally filthy during meal service from lack of prompt and systematic cleaning after use, while spots of mold and crusted and dried food can be seen all around the dinning room floor, walls and tables.

28. Five servings of soy product is provided daily with the vegan diet while the SAFE recommended daily allowance is three, potentially endangering Plaintiff's health and well-being and forcing him to abstain from two serving at a huge loss of protein and other essential nutrients.

F. Failure To Train and Supervise

29. Defendants Clark, Jackson, Gibson, Goldmon and Skillen, jointly and severally, failed/refused to properly and adequately train and supervise themselves and/or oversee the training and supervision of appropriate staff and inmates in the acquisition, preparation, and service of a vegan diet and sanitation at the Varner Unit Food Service.

G. Retaliation for Exercise of Redress

30. On September 16, 2019, at breakfast Plaintiff requested and was denied by an inmate server a vegan tray, forcing him to accept a regular tray. The following day at lunch (9-17-19), he requested a vegan tray multiple times over a period of more than 15 minutes, without service. Assuming his request denied, Plaintiff took a regular tray, eating only the beans and vegetables; he did not eat the meat dish of spaghetti with meat sauce. Defendant Jackson, in retaliation for the numerous grievance that Plaintiff had recently filed against the Food Service related to this action, issued Plaintiff a Major Disciplinary Report for taking the regular tray.

31. Although the disciplinary report was later dismissed (on or about 9-22-19) by Major Richardson, Defendant Clark, likewise in retaliation for the numerous

grievances filed by Plaintiff against the Food Service, suspended Plaintiff's vegan diet for one-year, depriving him of his religiously mandated diet and forcing him to continuously violate his religious vows and beliefs in order to sustain his health.

## IV. CLAIMS FOR RELIEF AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Each Defendant either executed, participated or contributed to the actions and conditions hereinbefore described and/or was made fully aware of such and failed/refused to take corrective action, to wit:

   a. As senior Food Production Manager at Varner Unit, Defendant Clark is directly responsible for: (1) failing to provide Plaintiff with a nutritionally adequate and religiously mandated vegan diet, as enunciated in paragraphs 14-16; (2) for obstructing Plaintiff's religious practice, as enunciated in paragraphs 17-23; (3) for providing nutritionally adequate regular and special diets and special feeding accommodations to meet the needs of inmates similarly situated to Plaintiff while denying Plaintiff the same treatment, as enunciated in paragraphs 24-25; (4) for the overuse of soy and continued use of the "tray slot" despite knowledge of its adversities, and the substandard dinning-room sanitation, as enunciated in paragraphs 26-28; and, (5) failure to properly train and supervise herself, free-world kitchen staff and inmates, as enunciated in paragraph 29. Defendant Clark was made fully aware of the foregoing via multiple administrative grievances filed and fully exhausted against her by Plaintiff for said conditions. Her actions and/or inactions violated the First, Eighth, and Fourteenth Amendments to the U.S. Constitution and RLUIPA, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

   b. Defendants Clark and Jackson jointly and severally executed the retalitory actions set forth in paragraphs 30-31, and Plaintiff fully exhausted administrative remedies against both Defendants for said actions which violated and continue to

violate the First Amendment to the U.S. Constitution.

    c. In that Defendant Gibson is Warden of Varner Unit he is responsible for the overall operation of Varner, including the protection of Plaintiff's safety and health and well-being as well as his constitutional rights. He was made fully aware of ALL the continuing and ongoing conditions and actions enunciated in paragraphs 14-31 of this complaint via numerous administrative grievances filed and fully exhausted against him by Plaintiff for said conditions and actions. Defendant Gibson's actions or inactions violated the First, Eighth, and Fourteenth Amendments to the U.S. Constitution and RLUIPA, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

    d. As ADC Dietitian charged with preparing the "Master Menu," Defendant Goldmon is directly responsible for failing to implement and define a vegan diet to be followed, that: (1) meets all of Plaintiff's daily recommended nutritional requirements, as complained of in paragraphs 14-16; (2) that is equal in nutritional value to the "Regular" and special diets served at Varner Unit, as described in paragraphs 24-25; and, (3) for failure to properly train and supervise, as enunciated in paragraph 29.[5] She was made fully aware of the foregoing via numerous administrative grievances filed and fully exhausted against her by Plaintiff for said actions and conditions. Her action and/or inactions violated the First, Eighth and Fourteenth Amendments to the U.S. Constitution and RLUIPA, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

    e. As Administrator of ADC Central Warehouse, Defendant Skillen is directly responsible for freezing tofu without first draining it, for storing and keeping

---

[5] Goldmon is also responsible for endangering Plaintiff's health and well-being as enunciated in paragraph 28, violating the constitution and laws cited above.

11

it past its expiration date, then shipping it to facilities – including Varner – to be served past its expiration date, resulting in service of a damaged and sometimes inedible, spoiled and unsafe product, as enunciated in paragraph 14 (a)-(c). She was made fully aware of the foregoing via administrative grievances filed and fully exhausted against her by Plaintiff for said actions, as well as failure to train and supervise, as set forth in paragraph 29. Her actions and/or inactions violated the Eighth Amendment to the U.S. Constitution and constituted the tort of negligence and intentional infliction of emotional distress under the law of Arkansas.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant Clark's actions referenced in paragraph 32 (a) above violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution as well as RLUIPA, 42 U.S.C. § 2000, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

2. Defendants Clark and Jackson's actions referenced in paragraph 32 (b) above violated Plaintiff's rights under the First Amendment to the U.S. Constitution.

3. Defendant Gibson's actions referenced in paragraph 32 (c) above violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution as well as RLUIPA, 42 U.S.C. § 2000, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

4. Defendant Goldman's actions referenced in paragraph 32 (d) above violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution as well as RLUIPA, 42 U.S.C. § 2000, and constituted the torts of negligence and intentional infliction of emotional distress under the law of Arkansas.

5. Defendant Skillen's actions referenced in paragraph 32 (e) above violated Plaintiff's rights under the Eighth Amendment to the U.S. Constitution

and constituted the torts of Negligence and intentional infliction of emotional distress under the law of Arkansas.

B. Issue an injunction ordering the Defendants or their agents to:

1. Provide Plaintiff a properly balanced and nutritionally adequate vegan diet in accordance to his religious beliefs that — taking into consideration Plaintiff's age and high level of physical activity — meets ALL of his daily recommended nutritional requirements (e.g., protein, vitamins, minerals, trace minerals, calories, carbohydrates, and essential fatty acids, etc.).

2. That the vegan diet include only the SAFE daily recommended allowance of soy products without deminishing the nutritional content of said diet.

3. Include in the vegan diet, but not limited to, the following:
   a. cooked or uncooked green leafy vegetables, daily;
   b. regular uncooked vegetables (e.g., cucumber, carrot, onion, tomato, broccoli, cauliflower and spinich, etc.);
   c. fresh (not canned) fruit, daily;
   d. brown unrefined rice;
   e. vegan compatible bread and pasta made from whole grain flours;
   f. complementary brown rice and/or corn with beans;
   g. besides navy and pinto beans, other leguminous (e.g., lima, kidney, black and butter beans, chickpea and black-eyed-pea, etc.);
   h. nut butters (e.g., peanut and almond butter);
   i. seeds (e.g., flax, chi, pumpkin and sunflower);
   j. vegan burger and vegan hot dog; and
   k. tempeh.

4. Provide Plaintiff a daily suplimentary high-protein sandwich with last meal (e.g., nut butter sandwich).

5. Make available for purchase via the Unit Pen Store vegan compatable food items such as, but not limited to, avocado, olives, garlic, olive oil, fresh fruits, flax and chi seeds, and dairy-free vegan yogurt.

6. Provide Plaintiff 30-60 minutes daily outdoor exposure to sunshine,

for absorption of the sun's energy and Natural Vitamin D and to pay homage to the sun god Surya.

C. Award compensatory damages in the following amounts:

1. $20,000 jointly and severally against Defendants Clark, Jackson, Gibson, Goldman and Skillen for the physical and emotional injury for which Plaintiff suffered as a result of each Defendant's actions and/or inactions described and complained of herein.

D. Award punitive damages in the following amounts:

1. $15,000 each against Defendants Clark and Jackson;
2. $25,000 against Defendant Gibson;
3. $10,000 against Defendant Goldman; and
4. $6,000 against Defendant Skillen.

E. Grant such other relief as it may appear that Plaintiff is entitled.

Respectfully submitted,

_Nicholas Roos_　　　　　　　　　　　　_12-9-19_
Nicholas Roos　　　　　　　　　　　　　　Date
P.O. Box 600 (ADC # 163931)
Grady, Arkansas 71644

### VERIFICATION

The undersigned verifies under penalty of perjury that the foregoing Statement of Facts and Claims are true and correct to the best of his knowledge, information and belief.

_Nicholas Roos_　　　　　　　　　　　　_12-9-19_
Nicholas Roos　　　　　　　　　　　　　　Date

14

Nicholas Roos # 163931
P.O. Box 600
Grady, Arkansas 71644

United States District Court
Clerk's Office
600 West Capitol Avenue
Suite A-149
Little Rock, Arkansas 72201