# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**NICHOLAS ROOS**                                                    **PLAINTIFF**
**ADC #163931**

**v.**                        **No: 4:19-cv-00895 BRW-PSH**


**YOLANDA CLARK,** *et al.*                                    **DEFENDANTS**


## PROPOSED FINDINGS AND PARTIAL RECOMMENDATION

## INSTRUCTIONS

The following partial Recommendation has been sent to United States District Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Nicholas Roos, an inmate at the Varner Unit of the Arkansas Division of Correction (ADC), filed a complaint pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and state law on December 13, 2019, alleging that the vegan diet at the Varner Unit and the early breakfast times

impede his ability to practice his religion (Doc. No. 2).  Roos sues Senior Food Production Manager Yolanda Clark, Warden James Gibson, Food Production Manager Joyce Jackson, Dietitian Debra Goldmon, and Warehouse Administrator Kay Skillen (the "Defendants").  The Court granted Roos' application to proceed *in forma pauperis* and ordered service on the Defendants (Doc. Nos. 6 & 10).

Before the Court is a motion for summary judgment, a brief in support, and a statement of facts filed by the Defendants, claiming that Roos did not exhaust available administrative remedies with respect to all of his claims against them before he filed this lawsuit (Doc. Nos. 44-46).  Roos responded (Doc. No. 48-50), and Defendants filed a reply (Doc. No. 51).  For the reasons described below, the undersigned recommends that the Defendant's motion for summary judgment be granted in part and denied in part.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must

demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Analysis

Defendants argue that they are entitled to summary judgment on some of Roos' claims because Roos failed to exhaust all available administrative remedies before he filed this lawsuit.  *See* Doc. No. 44.  In support of their motion, the Defendants submitted the ADC's grievance policy (Doc. No. 46-1); the declaration of Terri Grigsby Brown, the ADC's inmate grievance supervisor (Doc. No. 46-2); a copy of Roos' Grievance History Summary (Doc. No. 46-3); and copies of relevant grievances (Doc. No. 46-4).  Roos submitted a copy of grievance VU-19-00486 and a copy of a Step One grievance dated September 17, 2019 (Doc. No. 48 at 6-9).

### A.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.  It merely requires compliance with prison grievance

procedures to properly exhaust.  *See id*.  Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy.  *See id*.

Pursuant to the ADC's grievance policy, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure.  *See* Doc. No. 46-1 at 4.  To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident.  *Id*. at 5.  Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC."  *Id*. at 6.  An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."  *Id*. at 5-6.

A problem solver investigates the complaint and provides a written response at the bottom of the form.  *Id*. at 6-7.  If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance.  *Id*. at 8.  If a formal grievance is medical in nature, it is forwarded to the appropriate medical personnel for response.  *Id*. at 9.  The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on

whether the grievance is medical in nature), [1] or an Acknowledgement or Rejection of Unit Level Grievance (Attachment III).  If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 10-12.  An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II).  *Id.* at 11.  The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal.  *Id.*  If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected.  *Id.*

Once the Deputy Director responds or the appeal is rejected, the grievance process is complete.  *Id.* at 12.  According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances.  *Id.* at 13.  The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit.  *Id.* at 17.

---

[1] The Warden/Center Supervisor's Decision Form is Attachment III and is provided in response to a non-medical grievance.  The Health Services Response to Unit Level Grievance Form is Attachment IV and is provided in response to a medical grievance.  *See* Doc. No. 46-1 at 11.

### B.    Roos' Complaint

Roos adheres to Raja Yoga of the Hindu religion and asserts that following a vegan diet and daily meditation are central tenets of his faith.  Doc. No. 8 at 3.  Roos alleges that Senior Food Production Manager Yolanda Clark, Warden James Gibson, and Food Production Manager Joyce Jackson: (1) failed to provide him a nutritionally adequate vegan diet in accordance with his religious dietary restrictions; (2) obstructed his religious practice of meditation; (3) failed to provide an equally nutritional vegan diet to him compared to the regular and other special diets; (4) overused soy; (5) provided substandard sanitary dining conditions; (6) failed to properly train and supervise kitchen staff; and (7) retaliated against him on September 16, 2019.  *Id.* at 11-13.  Roos also alleges that Gibson refused to provide him with daily or regular outdoor exposure to the sun, which impeded his ability to practice his religion.[2]  *Id.* at 7.

Roos further alleges Dietitian Debra Goldmon failed to implement and define a vegan diet to be followed that: (1) met all of his daily recommended nutritional requirements; and (2) was equal in nutritional value to the regular and other special diets served at the unit.  *Id.* at 13.  Roos also claims that Goldmon overused soy products in the vegan diet and failed to properly train and supervise Clark, Jackson,

---

[2] Defendants do not seek summary judgment as to this claim.  *See* Doc. Nos. 44-45.

and kitchen staff. *Id.* at 9-10 & 13. Finally, Roos alleges that Warehouse Administrator Kay Skillen improperly stored tofu and kept it past its expiration date, causing spoiled and unsafe tofu to be served at the Varner Unit. *Id.* at 13-14. Roos also alleges that Skillen failed to train and supervise kitchen staff. *Id.* at 9-10 & 14.

## C.   *Relevant Grievances*

In her declaration, Inmate Grievance Supervisor Brown states that she reviewed Roos' non-medical grievance file for any grievances concerning his claims in this case. Doc. No. 46-2 at 1. Brown did not locate any grievance filed and submitted by Roos that alleged any defendant provided him with too many servings of soy products; that any defendant retaliated against him; or that the vegan diet was not nutritionally equal to other special diets provided to inmates. *Id.* at 3-4. Brown states that she found the following relevant grievances submitted by Roos which were completed through all levels of the grievance process before he filed this lawsuit. *Id.* at 2-4.

### Nutritionally Adequate Vegan Diet

Regarding Roos' claims that he was not provided a nutritionally adequate vegan diet, Brown states that Roos completed the grievance procedure with respect to the following grievances: VU-17-00509, VU-19-00431, VU-19-00436, VU-19-00488, and VU-19-00593. *Id.* at 2.

In VU-17-00509, Roos grieved that defendants Clark, Goldman, and Gibson and "other unknown ADC staff" failed to provide him with a nutritionally adequate vegan diet and served him expired tofu.  Doc. No. 46-4 at 33.  In his response, the warden addressed the ADC's religious diet accommodations and stated that Clark advised that expired tofu had not been served to inmates.  *Id.*  Roos appealed, reiterating his complaints about the tofu.  *Id.* at 34.  He did not name or describe any other individuals in his appeal.  *Id.*

In VU-19-00431, Roos grieved Clark, Goldman, and "all other unknown John Doe(s)" for serving inedible tofu, depriving him of adequate nutrition, and placing his health at risk.  *Id.* at 6.  In his response, the warden stated that Clark advised the tofu is pre-packaged and provides adequate nutrients.  *Id.*  Roos appealed, stating, "[t]ofu is not prepared in any way and is served in a enedible [sic] state."  *Id.* at 5.  He did not name or describe any other individuals in his appeal.  *Id.*

In VU-19-00436, Roos complained that Clark and "any other unknown John Doe(s)" failed to provide him with vegan foods such as soymilk and beans or adequate substitutions.  *Id.* at 12.  He claimed he was forced to choose between his well-being or religion.  *Id.*  In response, the warden stated that Roos grieved multiple issues, and that he would only address one issue in response.  He stated that Clark advised she was not working on the dates in question.  *Id.*  The warden also stated that "[s]ubstitutions such as vegetables that have proteins are served if there is a

need." *Id.*  In his appeal, Roos disagreed that he grieved multiple issues, and stated that he had not been provided with vegan foods listed on the master menu. *Id.* at 11. He also stated, "[t]his has been amended.  Ms. Clark did not do this, it was Ms. Jackson." *Id.*  The appeal response did not address Roos' complaint about Jackson, but simply concurred with the warden's decision and found the grievance without merit. *Id.* at 12.

In VU-19-00488, Roos grieved Skillen, Goldman, Clark, and "any other unknown John Doe(s) responsible" for providing non-vegan foods on the vegan diet such as bread and pasta made from white flour and baking soda, canned fruit, canned or frozen vegetables, white rice, and overcooked and over-seasoned foods. *Id.* at 15. The warden responded: "Captain Clark, the Food Production Manager, stated the kitchen uses a standard menu and it does not serve vegan food that violates a vegan diet." *Id.*  Roos appealed, but did not name or describe any other individuals. *Id.* at 16.

In VU-19-00593, Roos grieved Skillen, Goldman, Clark, Gibson, and "all other unknown John Doe(s) responsible for failing to provide [him] a nutritionally adequate and balanced vegan diet, and failing to correct the issue after being made aware of it." *Id.* at 39.  Roos specifically claimed that "the regular diet is superior to the vegan diet in Nutritional value; (specifically but not limited to protein and calories) . . .". *Id.*  The warden responded: "Capital Clark, the FPM, advised all

diets are prepared according to both, the Master Menu and the Diet Manual.  All vegans are served the same thereby indicating you are being provided a nutritional, adequate and balanced diet."  *Id.*  In his appeal, Roos stated that the meals were not those specified on the master menu.  *Id.* at 40.  He did not name or describe any other individuals.  *Id.*

Sleep/Meditation

Regarding Roos' allegation that his meditation was obstructed by early breakfast times, Brown found that Roos filed and appealed VU-17-00432 and VU-19-00432.  Doc. No. 46-2 at 2.

In VU-17-00432, Roos grieved that "W. Kelly, Warden Gibson, Kitchen Supervisor Y. Clark, Captain Richardson, Captain Demery, Captain Taylor, and all other unknown ADC John Does"[3] served breakfast at Varner between 1:30-3:00 a.m. which interferes with his ability to meditate.  Doc. No. 46-4 at 21.  Roos also claimed that he had to choose between eating breakfast or sleeping, thereby harming his health and religious practice.  *Id.*  This grievance was rejected as frivolous, and Roos appealed.  *Id.* at 22.  He did not name or describe any other individuals in his appeal. *Id.*  The appeal response stated that breakfast is served at a time that allows for the

---

[3] Kelly, Richardson, Demery, and Taylor are not named as defendants in this action.

safety and security of the unit, and that Roos may choose to not eat breakfast and sleep instead. *Id.* at 21.

In VU-19-00432, Roos made essentially the same complaint as in VU-17-00432 and named Gibson, Clark, Goldmon, and "all other unknown John Does(s)." *Id.* at 30. Roos added that the time breakfast is served also constituted discrimination because special accommodations are made for Muslims during Ramadan. *Id.* In his response, the warden informed Roos that he may choose sleep or breakfast just like the rest of the population. *Id.* The warden did not address the conduct of any named individual. *Id.* Roos appealed, reiterating his complaints, but naming no other individuals. *Id.* at 29.

Unsanitary Conditions

Regarding Roos' claims that the food slot and conditions in the dining room are unsanitary, Brown found that Roos filed and appealed VU-17-00612 and VU-19-00638. Doc. No. 46-2 at 3.

In VU-17-00612, Roos grieved Wendy Kelley,[4] Clark, and "all other unknown ADC officials responsible for" serving food at the Varner Unit. Doc. No. 46-4 at 46. Roos described his complaint allegation that he had to go to the regular tray window to request his vegan tray, and other inmates became angry because he breathed on their food. *Id.* The warden's response informed Roos that his grievance

---

[4] Kelley is not named as a defendant in this action.

did not present a grievable matter. *Id.* Roos appealed, reiterating his complaint that he is forced to communicate with kitchen staff in an unsanitary manner. *Id.* at 47. Roos did not name or describe any other individuals in his appeal. *Id.*

In VU-19-00638, Roos stated that he was making a claim against "Yolanda Clark, James Gibson, various kitchen supervisors on night shift and any other unknown ADC employees responsible for the overall lack of supervision in the chow hall and kitchen . . ." *Id.* at 61. Roos complained that the chow hall and kitchen are unsanitary with uncleaned tables, a tray hole dripping with food that goes uncleaned for weeks at a time, and food left on the floor to harden and turn black. *Id.* The warden responded that Clark had advised him all kitchen surfaces, dishes, and utensils were cleaned and sanitized in accordance with Arkansas Department of Health Food Service Establishment Regulations. *Id.* Roos appealed, expressing his disagreement. *Id.* at 60. He did not name or describe any other individuals in his appeal. *Id.*

<u>Failure-to-Train or Supervise</u>

Roos filed and appealed two grievances concerning his failure to train or supervise claims: VU-19-00638, described above, and VU-19-00487. Doc. No. 96-2 at 4.

In VU-19-00487, Roos grieved Gibson, Clark, Goldmon, Skillen, and "any other unknown John Doe(s) responsible" for failing "to properly train and supervise

staff and inmates who prepare and serve the vegan diet, . . . "  Doc. No. 46-4 at 52.

The warden's response described the management and supervision of food service

preparation at the ADC.  *Id.*  Roos appealed, stating that he disagreed.  *Id.* at 53.  He

did not name or describe any other individuals in his appeal.  *Id.*

### D.    *Failure to Name Certain Defendants*

Defendant Joyce Jackson argues that Roos has not exhausted his claims

against her because he did not specifically name her in any of the grievances relating

to his claims against her (*i.e.*, nutritionally adequate diet, sleep/meditation, diet not

equal to regular diet, unsanitary conditions, and failure-to-train or supervise).  Doc.

45 at 8-11.  Warden Gibson argues that Roos did not exhaust a claim against him

based on the unsanitary nature of speaking to kitchen staff through the food slot

because he was not specifically named in VU-17-00612.  *Id.* at 10.  Roos maintains

that he exhausted these claims against all the defendants because he reserved the

right to name additional persons later.  *See* Doc. Nos. 48-50.  Specifically, Roos

argues that his use of the phrase "unknown ADC officials" or "unknown John

Doe(s)" serves to exhaust his claims against any and all defendants.  *Id.*  Roos also

points out that he named Jackson in his appeal of VU-19-00436 and filed a separate

grievance to amend that grievance to name Jackson.  *Id.*

The ADC grievance policy requires inmates to name each individual involved.

*See* Doc. No. 46-1 at 5-6.  The United States Court of Appeals for the Eighth Circuit

has determined that failure to name specific defendants can be a procedural deficiency, and prison officials' acceptance and resolution of a procedurally deficient grievance can serve to establish proper exhaustion.  *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies).  *See also Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. 2012) (unpublished per curiam); *Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at \*1–2 (E.D. Ark. Dec. 17, 2015).

However, where the inmate properly names one or more defendants within a grievance and also includes a vague catchall phrase for other officers involved, courts have held that a response on the merits does not necessarily waive the exhaustion requirement. *See, e.g.*, *Emery v. Kelley*, No. 1:18-CV-98-DPM-PSH, 2019 WL 4447273, at \*1 (E.D. Ark. Sept. 16, 2019) ("[t]he Court concludes that these grievances weren't so clearly flawed that addressing them on the merits amounted to a waiver.").[5]  In these cases, courts typically analyze "the issues that prison officials actually reviewed and decided during the administrative appeal process."  *Jones v. Bond*, No. 5:12CV00456 SWW/JTR, 2013 WL 6332681, at \*3

---

[5] *Cf. Bargo v. Kelley,* No. 5:17-CV-281-JLH-PSH, 2018 WL 3371588, at \*3 (E.D. Ark. June 27, 2018) ("Health Services did not reject the grievance because it failed to name any individuals in accordance with the ADC's grievance policy. Instead, Health Services responded to the grievance on the merits, acknowledging that its policy did not provide for root canals.").

(E.D. Ark. Dec. 5, 2013).  *See also Colten v. Hobbs*, No. 5:12CV00236 KGB/JTK, 2014 WL 1309069 (E.D. Ark. Mar. 28, 2014); *Morrow v. Kelley*, No. 5:13CV0098 SWW/JTR, 2013 WL 6500616, at *3–4 (E.D. Ark. Dec. 11, 2013).

For example, in *Jones,* the inmate properly named three defendants in the grievance forms but failed to name defendant Bond. 2013 WL 6332681 at *3. Despite the inmate's failure to name Bond, prison officials specifically discussed the medical care provided by Bond in their responses to the inmate's grievance. *Id.* The court held that prison officials had therefore waived the exhaustion requirement as to defendant Bond. *Id.* In contrast, in *Burns,* the plaintiff grieved that defendant Eaton sprayed him with pepper spray but did not describe his complaint allegation that defendant White prevented plaintiff from washing off the pepper spray. 752 F.3d at 1141. The Eighth Circuit Court of Appeals held that the grievance did not exhaust the plaintiff's claims against White because ADC officials were not "asked to evaluate the conduct of White or the distinct § 1983 claims" asserted by plaintiff. *Id. See also Hooper v. Kelley*, No. 2:12CV00047 BSM, 2013 WL 5881613, at *4 (E.D. Ark. Oct. 30, 2013) (finding that "ADC officials did not reach and decide the merits of any improperly raised claims" against the defendant, and therefore, the ADC had not waived the exhaustion requirement).

It is undisputed that Roos did not specifically name Jackson in any of his initial grievances. He named Jackson only once - in a grievance appeal. In VU-19-

00436, concerning Roos' allegation that he was not receiving a nutritionally adequate vegan diet, he grieved as to Clark and other unknown John Does. ADC officials evaluated the conduct of Clark only, finding that she was not working on the dates about which Roos complained.  On appeal, Roos stated that he was grieving Jackson instead of Clark.[6]  *See* Doc. No. 46-4 at 11.  The ADC grievance procedure produced by the defendants provides that in an appeal, inmates may not "list additional issues, requests **and/or names**, which were not a part of the original grievance, as they will not be addressed."  Doc. No. 46-1 at 11 (emphasis added).  In his response to the appeal, the director did not address Roos' naming of Jackson, but simply stated that he concurred with the warden's decision.  Doc. No. 46-4 at 12.  In doing so, the director followed the grievance policy that listing additional names on appeal would not be addressed.  Roos did not exhaust his claim that he was not receiving a nutritionally adequate vegan diet as to Jackson, and that claim should be dismissed without prejudice.

---

[6] Roos also filed a separate grievance, VU-19-00486, stating that he wished to amend VU-19-00436 to name Jackson instead of Clark.  *See* Doc. No. 48 at 8.  The Warden responded, stating that per the grievance policy, Roos was not allowed to list additional issues, requests, and/or names which were not part of the original grievance. He stated that new issues, requests, and/or names identified on appeal would not be addressed.  Doc. No. 48 at 7. The director found the grievance without merit on appeal. Doc. No. 48 at 6.  VU-19-00486 did not serve to exhaust Roos' claims against Jackson in VU-19-00436.

Roos' other claims against Jackson also fail for lack of exhaustion because he did not specifically identify Jackson in any grievances asserting those claims. ADC officials were never asked to evaluate the conduct of Jackson in his many grievances, and there is no evidence that the ADC actually evaluated Jackson in response to any of those grievances. Therefore, Roos' grievances identifying an individual (not Jackson) and "various supervisors" or "other ADC employees" do not suffice to exhaust as to Jackson, and the ADC did not waive the exhaustion requirement when it addressed those grievances. For this reason, Roos' other claims against Jackson (*i.e.*, sleep/meditation, diet not equal to regular diet, unsanitary conditions, and failure-to-train or supervise) are not exhausted and should be dismissed without prejudice.

Likewise, Roos' claim against Gibson regarding the unsanitary nature of speaking to kitchen staff through a food tray slot is not exhausted. In VU-17-00612, Roos specifically named Wendy Kelley, Yolanda Clark, and "all other unknown ADC officials responsible for the manner in which Food is served at Varner Unit." *See* Doc. No. 46-4 at 46. He did not claim that Gibson was responsible for these conditions, and ADC officials did not identify or describe Gibson in their responses.[7]

---

[7] In fact, the warden's response found the complaint without merit, and the director's response found that the grievance should have been rejected at the unit level as frivolous. See Doc. No. 46-4 at 46-48. Thus, it is clear that the ADC did not evaluate the conduct of Gibson in response to the grievance.

Roos argues that this claim should be considered exhausted because his Step Two grievance was rejected and he therefore had no available remedies.  *See* Doc. No. 49 at 4.  Roos is incorrect – his remedy was the appeal he pursued.  The fact that the warden found his grievance to have no merit does not mean he had no available remedies – the grievance he filed serves to exhaust his claim against Clark.  He simply did not specifically name Gibson; if he had, the claim would be considered exhausted as to Gibson as well.  For these reasons, Roos' claim against Gibson relating to the unsanitary condition of speaking through the food tray slot should be dismissed for failure to exhaust available administrative remedies.

E.     *Claims Not Described in Any Grievance*

In her declaration, Brown stated that she found no grievance filed and appealed by Roos before he filed this lawsuit that described the following claims: (1) an equal protection claim that the vegan diet was not as nutritional as other special diets provided to other inmates; and (2) a claim that defendants overused soy in the vegan diet, providing as many as five servings of soy per day.  Doc. No. 46-2 at 3.

Roos concedes that he did not exhaust an equal protection claim based on the value of the vegan diet as compared to other special diets.  *See* Doc. No. 48 at 5. Accordingly, that claim is subject to dismissal for failure to exhaust administrative remedies.

With respect to his claim that the defendants overused soy in the vegan diet, Roos argues that this claim is encompassed by his general complaints about the inadequacy and imbalance of the vegan diet provided at Varner.  Doc. No. 49 at 4. The Court disagrees.  In each of the grievances in which Roos complained about the vegan diet, he never indicated that it was inadequate because it contained too much soy.  Rather, Roos complained about expired tofu, bread and pasta made from white flour and baking soda, canned fruit, canned and frozen vegetables, white rice, overcooked and overseasoned foods, too many beans, and missed servings of beans and soymilk.  Roos' grievances concerning the adequacy of the vegan diet did not put ADC officials on notice that he believed he received too much soy.  Accordingly, that claim is not exhausted and should be dismissed without prejudice.

## F.    *Roos' Retaliation Claim*

In her declaration, Brown stated that she found no grievance filed and appealed by Roos before he filed this lawsuit claiming that defendants Clark, Jackson, and Gibson retaliated against him on September 16, 2019.  Doc. No. 46-2 at 4.  Roos asserts that he grieved this claim by filing a Step One informal grievance on September 17, 2019, and he attaches a copy of that document.  *See* Doc. No. 48 at 9.  He also filed a sworn declaration to that effect.  *See* Doc. No. 50.  That Step One grievance does assert a retaliation claim against Clark, Jackson, and Gibson. Roos claims that he did not receive a timely response and proceeded to Step Two on

September 24, 2019, "by using the yellow copy of said grievance" and placing it in the grievance box.[8]  Doc. Nos. 50; Doc. No. 46-4 at 66.  Roos' grievance history in eOMIS does not reflect that a Step Two grievance was filed between September 22 and October 7, 2019, other than VU-19-00612 (discussed earlier), which concerned a different issue.  *See* Doc. No. 46-3 at 1.  Based on the record before the Court, it appears that Roos received a late response to his Step One grievance on September 26, 2019.[9]  *Id.*

As stated earlier, in response to a Step Two grievance, Roos should have received a Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II).  Roos claims he received neither,[10] rendering the administrative remedy unavailable.[11]

---

[8] The ADC grievance policy provides that an inmate should receive a timely response to a Step One grievance within three working days.  An inmate may proceed to Step Two if he does not receive a timely response by submitting either the yellow or pink copy that was retained by him within three working days from the time the response was due.  Doc. No. 46-1 at 6-8.

[9] The grievance Roos attaches as an exhibit in support of his argument appears to be a copy of the one that was responded to on September 26, 2019.

[10] The grievance policy requires that an appeal must be written in the space provided on the Step Two response or the Acknowledgement/Rejection form.  Since Roos did not receive either, he claims he was unable to appeal.

[11] The United States Supreme Court has held that an administrative remedy is unavailable when "it operates as a simple dead end," or when it "might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake,* 136 S. Ct. 1850, 1859 (2016).

Doc. No. 48 at 4-5; Doc. No. 49 at 5-6.  In response, the defendants point out that the ADC grievance policy provides that an inmate who does not receive a timely response to his Step Two grievance may appeal within five working days.  Doc. No. 51 at 6; Doc. No. 46-1 at 10.  The ADC grievance policy is clear regarding how to appeal a response or acknowledgement to Step Two by including the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II).  However, as Roos points out, there is no provision for filing an appeal if the inmate does not receive **any** response to a Step Two grievance.

Roos then proceeded to file a grievance complaining that he had not received an acknowledgment or response to the Step Two grievance claiming retaliation.  On October 9, 2019, Roos submitted VU-19-00669, in which he grieved:

> A claim against Yolanda Clark, Ms. Jackson, Warden Gibson and unknown ADC employees responsible.  On 9-17-19 I filed a grievance against the afore mentioned persons for failing to provide me a proper vegan diet then retaliating against me when I receive the only food provided to me.  On 9-24-19 I proceeded to Step Two.  I have not received any acknowledgement or reply to the step two grievance.

Doc. No. 46-4 at 66.  Roos' grievance at Step Two was found without merit on grounds that

> all grievances received in the Grievance Office are acknowledged, rejected or NFA.  Your grievance record indicates you have grieved this issue concerning your vegan diet, food service and staff approximately

(10) times from the month of July 2019 to present.  Thus indicating
your grievances were processed.  I find this issue without merit.

*Id.* at 67.  Roos appealed, stating "previous grievances were responded to.  But one
grievance was not; it pretained [sic] to retaliation on 9-17-19.   There is no
accountability for the one of (11) eleven grievances that go missing."  *Id.*  Roos'
appeal was found without merit.  *Id.* at 68.

VU-19-00669 does not serve to exhaust Roos' retaliation claims in this
lawsuit because it complains about the ADC's failure to respond to his retaliation
grievance at Step Two instead of grieving the retaliation itself.  It does, however,
corroborate Roos' claim that he submitted a Step Two grievance claiming retaliation
by Clark, Jackson, and Gibson but received no response.  Further, Roos has provided
a sworn statement that he followed the grievance procedure and proceeded to Step
Two by placing the yellow copy of his September 17, 2019 grievance in the
grievance box.  At that point, he maintains the grievance procedure became a dead
end because he did not receive any acknowledgement or response to his Step Two
grievance and could not appeal.  The evidence produced by Roos is sufficient to
create an issue of fact with respect to whether or not he exhausted his retaliation
claim.  *See e.g., Boyd v. Doe,* 746 F. App'x 599, 600 (8th Cir. 2018) ("A record
keeper's declaration that a prisoner did not exhaust a grievance is insufficient to
establish non-exhaustion as a matter of law when the prisoner makes sworn
assertions that he took the necessary steps to exhaust."); *McPeek v. Blanchard,* 670

F. App'x 424, 424-25 (8th Cir. 2016) (issue of fact prevented dismissal for non-exhaustion where inmate provided sworn affidavit stating that he filed a grievance that the defendants lost or never responded to); *Conner v. Doe,* 285 F. App'x 304, 304 (8th Cir. 2008) (grievance officer's declaration stating that there was no record of inmate filing any grievances "was insufficient to establish failure to exhaust in the face of Conner's assertion in his verified complaint that he had filed at least two grievances but did not receive copies of them or responses to them.").

Under these circumstances, the Defendants have failed to meet their burden to demonstrate that Roos failed to properly exhaust his administrative remedies as to his retaliation claim.  Accordingly, that claim should proceed.

## IV.  Conclusion

The undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 44) be granted in part and denied in part.  The following claims should be dismissed without prejudice for failure to exhaust available administrative remedies:

(1)    Roos' claims against Jackson other than his retaliation claim;

(2)    Roos' claim that Gibson was responsible for the unsanitary nature of speaking to kitchen staff through a food tray slot;

(3)    Roos' claim that the vegan diet was not as nutritional as other special diets provided to other inmates; and

(4)     Roos' claim that defendants overused soy in the vegan diet, providing

as many as five servings of soy per day.

DATED this 16th day of November, 2020.

_____

UNITED STATES MAGISTRATE JUDGE