IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OR ARKANSAS
CENTRAL DIVISION

**NICHOLAS ROOS, ADC #163931**                                              **PLAINTIFF**

VS.                       **CASE NO. 4:19-CV-00895 BRW-PSH**

**YOLANDA CLARK,** *et al.*                                              **DEFENDANTS**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The below findings of fact and conclusions of law are made following a two-day bench trial that commenced on April 6, 2023. As set out below, judgment will be entered for Defendants.

**I.**     **BACKGROUND**

On December 13, 2019, Plaintiff, an inmate at the Varner Unit of the Arkansas Division of Correction (ADC), filed a complaint pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA). After screening the complaint, the Court allowed Plaintiff to proceed.[1] Following discovery, Defendants filed a motion for summary judgment.[2] That motion was granted in part. Judgment was entered for Defendants on Plaintiff's official capacity claims for money damages; Plaintiff's equal protection and state law claims were dismissed without prejudice; Plaintiff's Eighth Amendment failure-to-protect claim based on the alleged danger posed by asking for his food through a food slot was dismissed without prejudice; Plaintiff's Eighth and First Amendment claims against Defendant Gibson based on lack of sun exposure were dismissed with prejudice.[3]

However, questions of material fact remained as to the issues discussed below, and Plaintiff's bench trial commenced on April 6, 2023.

---

[1] Doc. No. 6.
[2] Doc. Nos. 126.
[3] Doc. Nos. 140, 143.

1

## II. DISCUSSION

### A. RLUIPA

To succeed on his RLUIPA claim, Plaintiff must establish that a government policy or action substantially burdens his sincerely held religious belief.[4]

Based on Plaintiff's trial testimony, he follows Raja Yoga of the Hindu religion and alleges that central tenants of his religion are following a vegan diet, daily meditation, and worship of the sun god Surya.

#### 1. Vegan Diet

Based on the testimony, I do not question whether Plaintiff is sincere about following Raja Yoga Hinduism or that the religion recommends a vegan diet. However, the evidence supports, by the greater weight of the evidence that *Plaintiff*, intentionally does not adhere to that specific tenant of his faith. Since 2022, Plaintiff has *intentionally* purchased nearly 450 non-vegan food items from the commissary, despite vegan items being available. He, of course, is welcome to eat non-vegan if he chooses, but he cannot blame Defendants for these choices when sufficient food is available for him to comply with a vegan diet. Plaintiff's argument that he is forced to purchase these items because the vegan meals are nutritionally insufficient is unavailing. Additionally, after reporting to prison weighing under 150 lbs, Plaintiff has maintained a weight over 200 lbs and for the past two years has reported no unintended weight loss. Accordingly, Plaintiff's RLUIPA claim related to a vegan diet fails.

#### 2. Sun God

Plaintiff also testified that he is required to worship the sun god, Surya, with sun salutations. He argues that he is required to do this in direct sunlight, but provided no evidence,

---

[4] *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015).

other than his claim that he is "better served" by performing the sun salutations outdoors. Accordingly, Plaintiff failed to establish that a central tenant of his religion is practicing outdoor sun salutations. Defendants have not prevented Plaintiff from doing them from his window. Plaintiff's preferences are insufficient to support a RLUIPA claim. Rather, outdoor sun salutations, instead of through a window, must be a central tenant of his religion. Other than his unsubstantiated opinion, Plaintiff produced no evidence to support this claim.

### 3. Meditation

As set out below, Plaintiff has not provided sufficient evidence to support his claim that the vegan diet, mealtimes, and insufficient sleep have prevented him from meditating in accordance with his religion. While the conditions might not be ideal for meditation, they are not intentional and do not "substantially burden" Plaintiff's ability to meditate. The prison setting is not intended to work around Plaintiff's preferred schedule. Instead, the conditions are intended to ensure the safety, security, and needs of all inmates in the ADC.

### B.   First Amendment

Plaintiff's First Amendment Claims are meritless for the same reasons set out in Section A. Defendants have not infringed on Plaintiff's rights to worship Surya or eat vegan. The claim that lack of sleep disrupts Plaintiff's meditation will be discussed in detail below.

### C.   Conditions-of-Confinement

To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show (1) the alleged deprivation was, "objectively, sufficiently serious," and resulted "in the denial of the minimal civilized measure of life's necessities," and (2) prison officials were deliberately indifferent to "an excessive risk to inmate health or safety."[5]

---

[5] *Farmer v. Brennan*, 511 U.S. 825, 834 (1970).

### 1. Vegan Diet

To prevail in a conditions-of-confinement claim based on Plaintiff's diet, he must present evidence that the prison officials provided a nutritionally inadequate diet, and that the diet was detrimental to the inmate's health. Plaintiff asserts that that Defendants violated his Eighth Amendment rights by failing to ensure that the vegan diet provided at the Varner Unit is nutritionally adequate.[6]

While an inmate has an established right to an adequate and nutritious diet, an inmate is not generally entitled to receive a particular type of food, if the food provided is nutritionally adequate.[7] There is also a robust consensus of persuasive authority holding that a prisoner must be provided food that is not forbidden by his religion and that foods prohibited by one's religion do not count toward a prisoner's nutritional needs.

Plaintiff testified that the ADC's vegan diet was insufficient and presented expert testimony to support his claims. However, that testimony was specific to *Plaintiff's* specific needs based on his claims of what, appears to me, to be an exaggerated exercise routine. The ADC has a duty to provide a nutritious diet to all inmates, not an individualized plan for someone doing above average cardio and weight training. Additionally, there was no testimony that Plaintiff was prevented from supplementing his diet to maintain his "ideal weight."

Finally, Plaintiff presented no evidence of detrimental health effects related to the vegan diet that is provided. Plaintiff's expert witness testified that detrimental health effects might, generally, result from an insufficient diet. However, Plaintiff produced no evidence that he has been diagnosed with any of these conditions as a result of alleged insufficient nutrition.

---

[6] Doc. No. 8 at 3-5, 12-13.
[7] See *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Burgin v. Nix*, 899 F.2d 733 (8th Cir. 1990).

Although he alleges that he has lost weight in prison, the records revealed otherwise. As mentioned above, Plaintiff gained weight after reporting to prison, has maintained a weight over 200 pounds, and for the past two years has reported no unintended weight loss.

### 2. Sleep Deprivation

While "conditions designed to prevent sleep" may violate the Eighth Amendment, Plaintiff has failed to show: (1) that objectively, the Defendants were responsible for conditions at the ADC that were designed to prevent sleep, and (2) that subjectively, the Defendants were deliberately indifferent to conditions that prevented Plaintiff from sleeping.

First, based on the evidence, the pre-3 a.m. mealtimes were unintentional and remedied once Defendants were notified.[8] While I am concerned that the warden's under oath testimony at a previous hearing appears to be contradicted by prison records, sufficient evidence has not been presented to support a finding that the meal times were intended to interfere with sleep.

Second, the policy – breakfast from 3:00 to 6:00 a.m. – exists to feed inmates in a timely fashion, not to deprive inmates of sleep. Based on the testimony, breakfast must start at 3:00 a.m. so 1,500 inmates can finish breakfast before the shift change at 6:00 a.m. and so that inmates can report to work assignments. Additionally, if an inmate wants to sleep in, lunch is served early too – starting at 10:00 a.m.

Third breakfast is not served every day at the same time to every inmate. The Warden testified that the schedule is rotated daily throughout the barracks, meaning breakfast is never served consistently at 3:00 a.m. to the same inmates. For sleep deprivation to rise to the level of

---

[8] I am somewhat concerned about the Warden testifying before Judge Harris and telling her the issue had been resolved, when, as Plaintiff pointed out, repeated instances continued to occur in the days and weeks after that testimony. However, there was no evidence that the early start times were intentional, and I do not believe starting early, alone, amounts to a constitutional violation.

an Eighth Amendment violation, a person's sleep must be consistently broken for a period of time with no relief. Here, Plaintiff does not have the 3:00 a.m. breakfast even two days in a row because of the rotating schedule.

Fourth, if Plaintiff wants seven or eight hours of sleep before the early breakfast, he can go to bed early. Plaintiff can typically go to sleep as early as 6:30 p.m. every night, if not before. Plaintiff has no constitutional right to dictate meal-scheduling at the prison. As Plaintiff noted, breakfast times are a pre-scheduled event, which means he is well-aware of which days he needs to go to bed earlier to get seven to eight hours of sleep. Plaintiff testified at times he misses breakfast to "sleep in" so that he can get at least six to seven hours of sleep. However, although Plaintiff is allowed to go to sleep in the afternoon after supper, he chooses not to sleep because he does not want to miss recreation time or library call, both of which are optional activities. If Plaintiff was actually consistently sleep deprived, he could choose to go to sleep earlier rather than attend these or other nonessential activities.

Plaintiff presented no evidence that he has suffered detrimental health effects related to the sleep schedule in prison and 3:00 a.m. breakfast. While detrimental health effects might, generally result from insufficient sleep, that is not enough to prove his case. Furthermore, the evidence established that Plaintiff complained of insomnia even before entering prison, and he has not shown that the conditions have exacerbated this condition.

**D.     Failure to Train**

To prevail on an Eighth Amendment claim that ADC officials failed to properly train subordinates, Plaintiff must show that the officials: (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or

tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the inmate injury.

Based on the evidence, as discussed in the RLIUPA – Vegan section above, Plaintiff has not established an actual injury based on his failure to train allegations.  Whether staff members are adequately trained does not affect his conscious decision to purchase non-vegan food.

Plaintiff also complains about the conditions of the mess hall, kitchen, and whether the food slot is sanitary.  First, the evidence was that the mess hall and kitchen are continuously cleaned.  Isolated incidences are insufficient to support Plaintiff's claims. Second, although Plaintiff argued that there were mice and roaches in the kitchen and presented a witness on this topic, the witness said that Defendants have someone come spray monthly and they are provided traps.  Third, the complaints about the food slot are nominal at best.  If Plaintiff does not want to talk over another inmate's food tray, he should let the inmate take it first.  This alleged "problem" is created through Plaintiff's own actions, not Defendants'.

## CONCLUSION

Based on the findings of fact and conclusions of law above, judgment will be entered for Defendants. This case is DISMISSED with prejudice.

The lawyers for both parties are commended – they were well prepared and tried the case in a professional manner.  Plaintiff's lawyers were appointed and pursued the case vigorously to the credit of the private bar – a proud tradition of our profession.

IT IS SO ORDERED this 13th day of April, 2023.

        Billy Roy Wilson
        UNITED STATES DISTRICT JUDGE